IN THE UNITED STATES DISTRICT COURT FOR
THE CENTRAL DISTRICT OF CALIFORNIA RIVERSIDE



FILED
CLERK, U.S. DISTRICT COURT
APR 28 2025
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION   BY DEPUTY

**CHANDANA BASU**
2225 N 1ST AVE
UPLAND, CA 91784
813-455-8755
  Plaintiff,

v.

**OCWEN BANK/ONITY MORTGAGE,**
**PHH MORTGAGE CORPORATION**
**d.b.a. PHH MORTGAGE SERVICES,**
**WESTERN PROGRESSIVE**
FORECLOSURE TRUSTEE SERVICES

  Defendant.

FEE PAID

Civil Action No.

ED CV 25 - 01026-MWC(SKx)

COMPLAINT FOR DAMAGES AND
REQUEST FOR EQUITABLE RELIEF

JURY DEMAND CONTAINED HEREIN

B/O
V/S

Plaintiff states as follows for HER Complaint against Defendant PHH Mortgage Corporation d.b.a. PHH Mortgage Services:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Chandana Basu ("Basu") is the legal owner of the real property located at and commonly known as 2225 N 1st Ave, Upland, CA 91784 ("the Home").

2. Basu is a 72-year-old woman.

3. Basu currently maintains the Home as their primary, principal residence, and has always maintained the Home as such relevant to this Complaint.

4. Ocwen Loan Servicing LLC ("Ocwen" defendant")) serviced a Note (the "Note") and a Deed of Trust on the Home securing the Note (the "Deed of Trust"), each executed by Basu

1

(collectively, the "Loan"), at all times relevant to this Complaint until servicing rights to the loan transferred to Defendant PHH Mortgage Corporation d.b.a. PHH Mortgage Services ("Defendant " or "PHH") as a result of a Ocwen merging into PHH, defendant, Western Progressive("

5.   PHH is the current servicer of the Loan and became a debt collector on this Loan as since acquiring servicing rights to the Loan as part of their merger with Ocwen.

6.   Ocwen and PHH acted as a servicer and debt collector for the owner of the Loan at all times relevant to this complaint.

7.   Western Progressive ("Western" or Defendant)is the Foreclosure Trustee Service for Ocwen/ PHH.

8.   This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA) and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692k(d), *et seq.*

9.   This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 u.s.c. § 1367.

10.  This Court has personal jurisdiction over PHH as PHH conducts business all across the United States including the servicing of the Loan in Shelby County, Tennessee, within this Judicial District.

11.  This Court has personal jurisdiction over actions committed by Ocwen, for which PHH, and Western Progressive is responsible pursuant to their status as the surviving entity following their merger with Ocwen, as Ocwen conducted business in the State of Tennessee until its cancellation of registration due to said merger on August 6, 2019.

12.  This action is filed primarily to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) and implemented pursuant to section 6(f) of RESPA which

2

became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.41 of Regulation X.

a. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Basu maintains the Home as her
b. primary residence within this District.

## INTRODUCTION

13. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

14. Specifically, on January 17, 2013, the CFPB issued the RESPA (Regulation X) Mortgage Servicing Final Rules, 78 F.R. 10695 (February 14, 2013), which became effective on January 10, 2014.

15. The Loan is a "federally related mortgage loan" as defined by 12 C.F.R. § 1024.2(b).

16. Ocwen is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4), nor the exemption for a "qualified lender", defined in 12 C.F.R. § 617.7000.

17. PHH is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4), nor the exemption for a "qualified lender", defined in 12 C.F.R. § 617.7000.

18. Basu has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches which provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

19. Basu asserts a claim for relief against PHH for violating 12 U.S.C. § 2605(k)(l)(E) for breaches of 12 C.F.R. § 1024.41 under Regulation X as set forth, *infra*.

20. Basu is a "consumer", as that term is defined by 15 U.S.C. § 1692a(3), and a elder person affected by a violation of the FDCPA, and other violations, with standing to bring this claim

under 15 U.S.C. § 1692.

21. PHH is a "debt collector" as defined by 15 U.S.C. § 1692a(6) as PHH began collecting on the Loan when the Loan became in default.

22. The Loan is a "debt" as that term is defined by the FDCPA as the underlying debt sought to be collected by PHH was a residential mortgage the primary purpose of which was for personal, family, or household use.

**FACTUAL BACKGROUND**

**(Default and Loan Modification)**

23. Basu has been scammed for $8500,000 by one of her former clients of her medical billing business, the said client targeted Basu to take her money, business trade secret, and her clients. She has been ill, and in addition to theft, Basu's employer in Tampa Florida, suffered severe financial loss due to natural disasters during the Covid-19, and 2023/2024 multiple hurricanes, tornados, flood and other natural disasters, Loan fell into default.

24. Sometimes in December 2024, California Mortgage Relief (State of California ) paid over $65,000 to PHH to bring the loan current. Plaintiff payment per month including mortgage payment, property tax and home insurance payment is $3,450. PHH refused to provide the documentation and the amount along with the proper application of that fund they received from California Mortgage Relief with Basu's request. Basu was asked to file a mortgage assistance application in June 2024. PHH offer a short sale and suggested Basu to list the property at about $1,300,000. Basu after getting a certified appraisal on or about December 8, 2024, learnet the value of her home was to be $1.600,250. Basu also filed a mortgage assistance application in December 2024. PHH scheduled a foreclosure sale on Basu's property on January 8, 2005.

25. Basu filed a voluntary petition seeking relief under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Central District of California in

4

the Central District of California on January 8, 2025, petition number was 6:25-BK-10086 (the "Bankruptcy") in an attempt to save the property.

26. In the interim, on or about January 2025, PHH sent Basu a proposed modification, Basu reasonably believed that modification would be approved, she voluntarily dismissed the Chapter 13 case expecting the outcome. *as **Exhibit 1.***

### IMPACT UPON AND DAMAGE TO PLAINTIFF

27. On or about December 8, 2024, Basu while working with a private lender for a
28. second mortgage to reinstate the loan Bas, paid for an appraisal. The home was appraised for $1,600250 as is. Please see Exhibit 2.
PHH suggested to short sale Basu home and to list for $1,300,000.
Basu provided the copy of the Appraisal Report to PHH.
29. Both Ocwen and PHH's improper actions have also caused Plaintiff to suffer other
30. damage including, but not limited to:

driven by the impending loss of her Home and the loss of over Seven Hundred Thousand dollars of ($700,000.00) of equity in her Home and by the fear that he will be imminently evicted from her Home, which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant harm;

### ADDITIONAL EVIDENCE OF A PATTERN AND PRACTICE OF VIOLATIONS OF REGULATION X COMMITTED BY OCWEN AND PHH

31. The actions of Ocwen and PHH are part of a pattern and practice of behavior in violation of Basu's rights and in abdication and contravention of Ocwen's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

32. PHH took over servicing of the Loan from Ocwen as a result of Ocwen's parent company, Ocwen Financial Corporation, purchasing PHH Mortgage Corporation in 2018, a sale which was completed on October 4, 2018.[1]

33. This purchase of PHH was necessitated in large part by various litigation and consent orders involving Ocwen's Real Servicing System.[2]

34. At the time of the filing of this Complaint, Ocwen has had at more than Thirteen Thousand (13,000) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgage products and at least Two Hundred Forty Two (242) such complaints identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account". Each such complaint is filed and cataloged in the CFPB's publicly accessible

---

board sizable portfolios of MSRs. We continue to work with the NY DPS to address matters they continue to raise with us as well as to fulfill our commitments under the 2017 NY Consent Order and PHH acquisition conditional approval. To the extent that we fail to address adequately any concerns raised by the NY DPS or fail to fulfill our commitments to the NY DPS, the NY DPS could take regulatory action against us, including imposing fines or penalties or otherwise restricting our business activities. Any such actions could have a material adverse impact on our business, financial condition liquidity and results of operations."

Online database, which is located at: http://www.consumerfinance.gov/complaintdatabase/.

35. Basu has reviewed the CFPB's consumer complaint database and has identified fifteen (15) complaints from other borrowers alleging RESPA violations by Ocwen which evidence conduct demonstrating that Ocwen has engaged in a pattern and practice of violating RESPA with respect to other borrowers. *The aforementioned consumer complaints are attached as **Exhibit 6** with the date, details, and a narrative disclosed by each consumer set forth in each complaint.*

36. At the time of the filing of this Complaint, PHH has had at least Seven Hundred Eighty One (781) consumer complaints lodged against them nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" concerning mortgages. Each such complaint is filed and cataloged in the CFPB's

publicly accessible online database. (http://www.consumerfinance.gov/complaint database/)

37. Basu has reviewed the CFPB's consumer complaint database and has identified fifteen (15) complaints from other borrowers alleging RESPA violations by PHH which evidence conduct demonstrating that PHH has engaged in a pattern and practice of violating RESPA with respect to other borrowers. *The aforementioned consumer complaints are attached as **Exhibit** 7 with the date, details, and a narrative disclosed by each consumer set forth in each complaint.*

## COUNT ONE:
## Violation of 12 USC § 2605
## (AGAINST ALL DEFENDANTS)

38. Plaintiff incorporates all allegations of this complaint and re-allege them as though they were fully set forth herein.

39. Defendant's conduct constitutes violations of 12 USC § 2605(e) which provides that a servicer must respond to any qualified written request by a borrower for information relating to the servicing of the loan within a certain time frame and with certain information. Defendant entirely failed to do so. On October 1, 2021, Plaintiff sent a Request to Defendant, but Defendant has failed to respond to plaintiff's inquiry and, instead, is proceeding with foreclosure of the property.

40. As a result of Defendant's violations of this statute, Plaintiffs have suffered actual damages including, but not limited to, loss of money and property, losses through overcharges, incurred attorneys' fees and costs to save his home, a loss of reputation and goodwill, destruction of credit, severe emotional distress, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression, according to proof at trial but within the jurisdiction of this Court. Defendant consciously disregarded Plaintiffs' rights, deliberately breaching their respective duties, showing willful misconduct, malice, fraud, wantonness, oppression, and entire want of care, thus authorizing the imposition of punitive damages.

## COUNT TWO:
## Mortgage servicing violations 15 U.S.C. 1639a and 12C.F.R
## (AGAINST ALL DEFENDANTS)

41. Due to the increase of homeowners needing assistance this year, we've prioritized supervision of mortgage servicers. A recent review of our 2025 supervision efforts revealed certain violations, including:

**42. charging late or default-related fees to borrowers in CARES Act forbearance**

**programs.** The CARES Act generally prohibits a servicer of federally backed mortgage loans from imposing these fees while a borrower's mortgage payments

43. **Charging consumers unauthorized amounts.** Our report found that, in some cases, mortgage servicers overcharged borrowers for services or added fees outside of their loan terms, including for home inspections and Broker Price Opinions.

44. **Misrepresenting mortgage loan transactions and payment history in online accounts.** Examiners found that services provided inaccurate descriptions of payments and transaction information, which may have misled borrowers.

45. **Failing to review borrowers' applications for loss mitigation options within 30 days.** Examiners found that mortgage servicers violated Regulation X because the servicers didn't evaluate the borrowers' complete loss mitigation applications and provide a written notice stating the servicers' determination of available options within 30 days of receiving borrowers' applications.

46. **Incorrect handling of partial payments.** Servicers are required to take one of the following specific actions when they receive a partial payment from a borrower: crediting the payment, returning it to the consumer, or holding it in an unapplied funds account. Examiners found that, in some cases, servicers put these payments in borrowers' escrow accounts rather than returning the amount or crediting it to borrowers' next monthly payment.

47. PHH's advertisement of the sale of the Home was the first notice required by applicable law for the non-judicial foreclosure process regarding the Loan.

48. PHH's actions, in advertising the sale of the Home when Basu was not more than 120 days delinquent on his obligations under the Loan, constitutes a clear and egregious violation of 12 C.F.R. § 1024.41(£)(1).

**COUNT THREE:**
Violation of
12 C.F.R. § 1024.41(£)(2) provides:

**(AGAINST ALL DEFENDANTS)**

47.   12 C.F.R. § 1024.41(£)(2) provides:

If a borrower submits a complete loss mitigation application during the pre-foreclosure review period set forth in paragraph (f)(l) of this section or before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, a servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless:

(i)The servicer has sent the Basu a notice pursuant to inform her that an early intervention is being offered. Please see Exhibit -2 which clearly states all the options available to Basu dated March 18, 2025. Basu immediately called and spoke with her relationship manager, he stated that that letter was sent in an error, Basu did not have given any option any more. But PHH never sent stating Basu has no other options.

Basu has about $700,000 equity in her home, which PHH is attempting to take through deception. Basu submitted another loan modification; it was again verbally denied.

48. PHH did not send any notice pursuant to 12 C.F.R. § 1024.41(c)(l)(ii) stating that Basu was not eligible for any loss mitigation option prior to advertising the November 1, 2019 sale.

49. Basu did not reject any loss mitigation options nor fail to perform on the TPP at any time prior to PHH advertising the November 1, 2019 sale.

50. PHH's actions, in advertising the sale of the Home when none of the requirements of 12 C.F.R. §§ 1024.41(f)(2)(i)-(iii) had been satisfied, constitutes a clear and egregious violation of 12 C.F.R. § 1024.41(£)(2).

51. Regardless of the theory of liability, PHH's actions in violation of 12 C.F.R. § 1024.4l(f) are part of a pattern and practice of behavior in conscious disregard for Basu's rights.

52. As a result of PHH's actions, PHH is liable Basu for actual damage, as further described, supra, and statutory damages. 12 U.S.C. § 2605(f)(l).

in reviewing an application and, if the loss mitigation application is not complete, to give the borrower a 'reasonable time' within which to submit any required information.")

53. Additionally, Basu requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(£)(3) when applicable.

55. As a result of PHH's actions, PHH is liable to Basu for actual damages as further described, supra.

California passed its Homeowner Bill of Rights, a homeowner who had submitted a complete loan modification application successfully used the law to get a preliminary injunction to stop the

foreclosure sale in the case of Singh v. Bank of America, 2013 WL 1858436 (E.D. Cal. May 1, 2013). In this case, the servicer never informed the homeowner of its decision regarding the homeowner's loan modification application before proceeding with the foreclosure. Eventually, the parties settled, and the case was closed.

## COUNT FOUR: CONVERSION (AGAINST ALL DEFENDANTS)

49. Basu restates and incorporates his statements and allegations contained in paragraphs 1 through 47 in their entirety, as if fully rewritten.

In addition, PHH's intentional and outrageous conduct has caused Basu to suffer extreme emotional distress driven by the reasonable and legitimate fear that his Home will be sold at sale on April 29, 2025, despite Basu's request for proper accounting of the entire accounting since 2019 when Basu's loan was $649,000, and now It's $918,000 with delinquent amount of $86,000 current outstanding am , which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

50. As a result of PHH's conversion, PHH is liable to Plaintiffs for actual damages as further described, *supra* as well as an award, as applicable for compensatory damages and punitive damages.

51. As a result of the actions of PHH, Defendant PHH is liable to Basu a total of $150,000 for overcharged fees and late fees and other unapproved fees which totaled to $918,000. Basufor actual damages as further described, *supra,* statutory damages, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Chandana Basu respectfully requests that this Court grant judgment in their favor against Defendant PHH Mortgage Corporation d.b.a. PHH Mortgage Services as follows:

A) A finding that PHH violated 12 C.F.R. § 1024.41(f) as alleged in Count One;

B) A finding that PHH committed violations of 15 U.S.C. § 1692(e)(2) and/or 15 U.S.C. § 1692(f) as alleged in Count Six;

C) For an award of actual damages in an amount to be determined at trial against PHH as to Counts One through Four.

D) For an award of statutory damages against PHH in the amount of One Thousand Dollars ($150,000.00) for overcharges of fees and other charges not allowed violating the FDCPA as alleged in Count Six;

E) For an award of compensatory damages, as applicable, in an amount to be determined at trial for the allegations contained in Count Four.

F) For an award of punitive damages, as applicable, in an amount to be determined at trial for the allegations contained in Count Four.

G) For an award of reasonable attorneys' fees if applicable and costs from PHH as alleged in Counts One and Six against PHH; and

H) For all other relief this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Chandana Basu demands a jury trial on all causes of action and claims with respect to which they have a right to a jury trial.

Dated: April 28, 2025,                    Respectfully submitted,

*C. Basu*
Chandana Basu

11